## SOUTHERN RY. CO. v. COLONNA.
### No. 3385.

Circuit Court of Appeals, Fourth Circuit.
April 4, 1933.

James H. Corbitt, of Suffolk, Va., and Thomas B. Gay, of Richmond, Va., for appellant.

John W. Oast, Jr., of Norfolk, Va., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

This case was before this court on a prior occasion as Southern Railway Company v. Hermans, 44 F.(2d) 366. It involves the claim of the estate of Leo Antone Hermans, deceased, to recover damages for his death following injuries received by him as a deckhand on the defendant's tug or steamer Memphis on September 7, 1929, in the harbor of Norfolk, Va., when he was crushed between the tug and a barge which was being taken in tow. The deckhand boarded the barge and was walking forward on a narrow walkway alongside the house on the barge, carrying a towing line, while the tug was coming up behind him, so that the two vessels might assume a position side by side and proceed to their destination. We held (1) that there was evidence of negligence on the part of the tug in the performance of the maneuver, because there was no lookout on board to watch out for the safety of the deckhand while engaged in the duty of carrying the line forward on the tug, although the tug was so constructed that the master in the pilot house could not see the deckhand on the barge as the vessels came together; and (2) that since the injured man had taken part many times in similar maneuvers without a lookout, he assumed the risk involved in the defendant's negligence, unless the tug approached the barge on this occasion in such an unusual way that the danger involved was not obvious to him. The angle of approach was such that he was caught between the house on the barge and two projecting guards attached longitudinally to the hull of the tug and extending, by reason of the rake or lift of the bow, to a higher point at the point of contact ten feet aft of the bow than they reached amidships. There was some evidence that this was not the usual manner in which the vessels made contact, and we held that the attention of the jury should have been specifically directed to

this point so that they might determine whether the danger was so apparent to the injured man that there could be no recovery in spite of the tug's neglect.

We were able to rule upon the other questions involved in the case, but since this question was one of fact, it was necessary that it be submitted to the jury and the judgment was therefore reversed and the case sent back for a new trial. We said: "The only open question left for the jury to decide, is whether the approach of the tug at such an angle to the barge that the guards on the tug near the bow were presented at a point so high as to reach over the deck and come up against the house of the barge, constituted a circumstance and a danger so unusual that it would be unreasonable to conclude that it was obvious to the deceased. These matters we think should be submitted to the jury at a new trial of the case." The mandate directed that the District Court set aside the verdict and grant a new trial in accordance with the opinion of the court.

■ After the case reached the District Court, the plaintiff, over the objection of the defendant, was granted leave to amend the declaration by adding an additional count and an additional bill of particulars, whereby new allegations supporting the charge of neglect on the part of the defendant were introduced into the case. It was charged that the deckhand was injured without negligence on his part through the failure of the officers and crew of the tug to observe an existing custom or usage to exercise due care to look out for his safety while in the performance of his duties. The amendment was made to furnish a basis for testimony tending to show that on prior occasions, when similar maneuvers were performed, the tug maintained a lookout as charged in the new count of the declaration. The appellant now makes the point that the trial court erred in permitting the plaintiff to file an amended declaration, contending that by the opinion and mandate of this court, the new trial should have been confined to the one question as to whether the angle of approach of the vessels was so unusual as to constitute a danger of which the injured man was not aware.

There was no error on the part of the District Court in this respect and no misunderstanding on its part of the ruling or mandate of this court. It was not our purpose to restrict the scope of the new trial so as to forbid the presentation of new evidence, if any should be discovered. It is true that it is stated in the former opinion that there was

only one question that was open for the jury, but this must be understood as having been directed to the state of the record before us rather than as an announcement that the parties should not be permitted to follow the usual practice upon a new trial. The matter of amendment was within the discretion of the trial court, 28 U. S. C. 777 (28 USCA § 777); and there was no abuse of the discretion in this case since the new amendment was germane to the general charge of negligence on the part of the defendant and gave notice of the new evidence which it was the intention of the plaintiff to produce. The amendment was made and the bill of particulars of the evidence was presented thirty days before the beginning of the second trial. The defendant therefore was not taken by surprise, but had ample notice of the new element in the case.

■ On the merits it is contended that there should have been a directed verdict for the defendant, because there was no evidence of neglect on its part; and it is said that our former decision, holding that there was negligence in the operation of the tug on account of the failure to maintain a lookout, was in conflict with the general rule announced in Aerkfetz v. Humphries, 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758, followed by this court in Southern Ry. Co. v. Verelle, 57 F.(2d) 1008. These cases disclose the limited obligation of a railroad to safeguard its employees in a railroad yard, where it is not practicable to give notice of the approach of engines and cars constantly moving back and forth and where experienced employees, thoroughly aware of the attendant dangers, are expected to take reasonable precautions for their own safety. We may not properly apply the conclusions reached by the courts in negligence cases upon mixed questions of law and fact under one set of circumstances to situations of a different character, and it does not follow that the tug in this instance had no duty to employ a lookout, because a lookout need not be used on moving cars in railroad yards. Compare Rocco v. Lehigh Valley R. Co., 53 S. Ct. 343, 77 L. Ed. ——.

There was one significant circumstance which distinguished the movement in this case not only from conditions in a railroad yard, but from those usually found in the shifting operations of a tug boat in a harbor. The Memphis, although used as a tug boat, was in effect a small steamer provided with a superstructure that interfered with the vision of the man in the wheel house, so that he could not see the hull of his vessel as it approached

a pier, or another vessel, such as the barge in this case. This condition, unusual for a tug, called for special consideration, and it could have been met without difficulty in the instant case. The evidence of the plaintiff tended to show that the man, who was walking forward on the barge ahead of the tug and carrying the towing line, could have been kept in view by the men on the tug; the captain could have left the wheel house and approached the deck rail at the side of the boat, from which point he could have signalled the engine room by a bell pull there located, or the mate on the lower deck could easily have acted as lookout. The necessity of the situation and the means of meeting it were therefore both obvious and it was a lack of ordinary care to ignore them.

We adhere, therefore, to our former decision on this point and we are brought to consider again, as on the former trial, the important question as to whether the danger of the situation was so obvious to Hermans that despite his employer's negligence, it must be held that he assumed the risk. Under the facts as they appeared in the former record, it was the practice for the man on the barge to look out for himself, and his assumption of the risk turned upon the inquiry as to whether the tug approached the barge at an unusual angle which he had no reason to expect. The evidence was changed in certain respects at the second trial. There was evidence on the part of the plaintiff tending to show that the vessels did come together in an unusual way, while the evidence on the other side tended to show much more clearly than at the first trial that there was nothing unusual in the situation on the day of the accident. In addition, new evidence was introduced by the plaintiff to show that it was the usual custom of those on the tug to warn the deckhand on the barge when the tug approached, and that this was done either through the captain coming to the rail of the tug or by the mate on the lower deck. This testimony was of importance because it is admitted that there was no warning given to Hermans by any one on the tug at the time of his injury. It is insisted by the appellant that the evidence adduced to show the custom was entirely insufficient for the purpose, but we do not find ourselves able to agree with this conclusion after a careful examination of the record. The evidence consisted of the testimony of two women, the widow of the injured man and a friend of hers, who occasionally rode on the boat around the harbor in the summertime for pleasure, and who testified that the captain or the mate were in the habit of calling out to the deckhand on the barge, as the vessels came together, to ascertain if he were all right; and there was the further testimony of a tugboat captain employed on another vessel in the harbor who said that it was the custom of the men on the Memphis to look out for the safety of deckhands on the side of the barge under circumstances like those under consideration, and that if the captain could not see him, the mate on the lower deck would give notice when the man was clear. The cross-examination of the last witness cast some doubt as to whether his evidence related to the custom prevailing at the time of the accident or at a period ten years previous, when he was employed on the Memphis, but we are of the opinion that the jury may fairly have inferred that the testimony related to the period of the accident. The witnesses for the tug deny that such a custom existed. Thus two issues of fact were raised which were left to the jury to determine, that is, whether the angle of approach of the vessels was unusual, and whether the custom of maintaining a lookout for the safety of the deckhand was in vogue. Since there was evidence sufficient to go to the jury on both of these points, it would have been improper to have withdrawn the case from the consideration of the jury and to have directed a verdict for the defendant.

It is also contended by the appellant that the deckhand's own negligence was the sole and direct cause of the accident, because after he was caught between the two vessels as they came together, he was seen to be facing towards the stern of the tug, and it is argued from this circumstance that he must have seen the guards of the tug in ample time to have gotten out of the way. We think that this contention cannot be sustained. At best the evidence merely tended to show contributory negligence on the part of the deceased and on this point the court correctly instructed the jury that contributory negligence was not a bar to a recovery but merely required that the damages found by the jury be diminished in proportion to the amount of negligence attributable to the employee.

Other objections relating to the rulings of the court on the sufficiency of the pleadings and on questions of evidence, and on instructions prayed by the defendant, are touched upon in appellant's brief. We have examined them and find no error, and they are not of sufficient importance to justify further discussion.

The judgment of the District Court is affirmed.