## BIERNACKI v. PENNSYLVANIA R. CO.
### No. 88.

Circuit Court of Appeals, Second Circuit.

Dec. 8, 1930.

Sydney A. Syme, of White Plains, N. Y., for appellant.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Morton L. Fearey, of New York City, and George F. Tinker, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Biernacki, the plaintiff's intestate, was an employee of the defendant, the foreman of a gang which regularly repaired a section of the track, other than that on which he was killed. He and his gang had been at work on this other section, had completed their work, and he was walking home with a companion, going west on the east-bound track so as to face all trains. Seeing a long east-bound freight train approaching, he crossed the west-bound track and went to get a drink at a shanty on the north. When he came out the freight train was still passing, and he walked along the west-bound track. While examining a switch he was struck and killed by the tender of a locomotive which was coming, rear end to, on the west-bound track. The plaintiff proved that no bell or whistle was blown, as it was the custom to do when

men are seen ahead upon a track. These were omitted, because the engineer could not keep a lookout, while the east-bound freight train was passing, as it still was, on the side where he sat; and because the fireman on the other side was stoking his fires. The judge dismissed the complaint at the close of all the proof, and the plaintiff appealed.

In the case at bar the engineer cannot be charged with fault for not keeping a lookout; the passing freight train kept him within the line of his cab, and the tender blocked his view. The only possible fault was the fireman's, who chose to stoke his fires while the engineer could not watch. We may for argument suppose that he should have realized that the locomotive was running blind, and that he should have kept watch himself. Even so, it seems to a majority of us that the intestate assumed the risk of the fireman's negligence under the ruling in Chesapeake & Ohio Railway v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914.

In that case a trackman, riding on a tricycle, was overtaken without warning and killed by a train, whose crew did not keep proper lookout; and it was held that the intestate had assumed the risk of their omission, and that his administratrix could not recover. We cannot suppose that Nixon was held to have assumed the risk that, though seen, he might be run down without warning. That would be an inhuman rule [Norfolk, etc., Ry. v. Gesswine, 144 F. 56, 58, 59 (C. C. A. 6)]; certainly in the case of a man riding a tricycle on a main track, who has more to do than step off; who must stop his tricycle and get it and himself out of the way. If the crew was under a duty so to warn him if seen, the case stands merely for the proposition that they were under no duty to see him, as we think it does.

We cannot see that it makes any difference to prove a custom to signal when the crew does see a man ahead. While this assures trackmen of a warning if discovered, it does not prove that a lookout is being kept. It would be material in showing liability, no doubt, if the signal had been omitted after the man was seen, assuming that any custom were necessary to establish liability in that event; but it cannot do more. The record is bare of any proof that it was customary to keep a lookout for trackmen. While we agree that trackmen might reasonably infer that they would be warned when seen, it does not seem to us that they would be justified in concluding from that that the crew was on

the watch to discover them. Whether or not, if free, we should have imposed such a duty upon the railroad, we are concluded by the case cited, and have only to say how far it is applicable.

Finally, it is not clear that even if the custom should be construed as imposing a duty upon the crews to keep a lookout for trackmen, the intestate did not assume the risk of their neglect. Under the Employers' Liability Act (45 USCA §§ 51–59) it is not true that an employee never assumes the risk of his employer's negligence. Seaboard Air Line Ry. v. Horton, 233 U. S. 492, 503, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Boldt v. Pennsylvania R. R. Co., 245 U. S. 441, 38 S. Ct. 139, 62 L. Ed. 385; Toledo, etc., Ry. v. Allen, 276 U. S. 165, 171, 48 S. Ct. 215, 72 L. Ed. 513. If the dangers be apparent and known, they are assumed; so far as this may differ from the common-law, if at all, the statute prevails. It is not necessary for us to decide whether the danger of a negligent lookout was such an apparent and known danger; we refer to the point only against the possibility that it might be supposed to have been overlooked.

Judgment affirmed.

CHASE, Circuit Judge (dissenting).

I agree that, after the Nixon Case, it is not to be thought that a railroad ordinarily owes any duty to warn an employee, engaged in inspecting its track, of the approach of trains. Consequently, the employee assumes the risk of trains approaching without warning while he is at work. Yet this does not include the assumption of the risk of the defendant's negligent operation of its trains, neither obvious nor known to the employee, and of the added danger so created.

In the Nixon Case, the plaintiff's intestate was held to have assumed the risk of trains approaching without warning because the railroad owed him no duty to keep a lookout and so was not negligent in failing to do so. Of course, it followed that the risk that trains might come upon him without warning when he was at work was a danger inherent in the business, so conducted, after all danger, which due care on the part of the railroad would take out, had been removed. As to that residue, and as to that only, he assumed the risk. Union Pacific Railway Co. v. O'Brien, 161 U. S. 451, 16 S. Ct. 618, 40 L. Ed. 766; Choctaw, Oklahoma & Gulf Railroad Co. v. McDade, 191 U. S. 64, 67, 24 S. Ct.

24, 48 L. Ed. 96. So far from having to assume that the employer may be negligent, to assume the risk of that, and to increase his own vigilance accordingly, any employee may assume that his employer will fulfill its duty to exercise due care and prudence toward him and to rely upon that assumption, both in determining whether to take or keep a job and how to act for his own safety in doing the work until and unless the special circumstances in any particular instance do, or should, give the employee to understand that his employer is not doing its duty toward him and is negligent. Chesapeake & Ohio Ry. Co. v. De Atley, 241 U. S. 310, 311, 314, 36 S. Ct. 564, 60 L. Ed. 1016; Chesapeake & Ohio Ry. Co. v. Proffitt, 241 U. S. 462, 468, 36 S. Ct. 620, 60 L. Ed. 1102; Seaboard Air Line Ry. v. Horton, 233 U. S. 492, 504, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Erie Railroad Co. v. Purucker, 244 U. S. 320, 324, 37 S. Ct. 629, 61 L. Ed. 1166.

If the evidence in this case did not show a prima facie case of negligence on the part of the defendant in failing to comply with a custom it had to warn employees in the situation of the deceased when killed, which alone brought on the new and not to be expected danger, the risk of which he is held to have assumed, I should not disagree with the result.

Had the issues been submitted to the jury, there was ample evidence on which it could, and doubtless would, have found that this defendant had, through a long-continued practice to warn employees under such circumstances, established a uniform custom so to do, known to the deceased and all others in like circumstances, by which the defendant had set up a standard of care in the operations of its trains which included warning its track workmen of their approach. While the defendant could not establish a lesser standard of care than the prudent man rule required, it could be more careful; and, having made it a uniform custom to warn the deceased when trains were approaching him when he was at work on the track, it owed him the duty to continue to warn him until, at least, it had given him notice that the custom would be abolished. As no careful and prudent man under like circumstances would do less, not to do so was negligence. St. Louis & S. F. Ry. Co. v. Jeffries (C. C. A.) 276 F. 73, 75, and cases there cited. The defendant's negligence in failing to comply with the standard of care it had itself established put the deceased into danger in which he would not otherwise have been placed. It lulled him into a false sense of security, and created a risk which was not inherent in the business as conducted according to the standard of care this employer had, to the knowledge of the employee, set up, and so was not assumed by the deceased when he went to work for it, or while he continued to work without notice that the customary warning signals would not be given him. It would have been assumed only if the employer owed the employee no duty to warn him in accordance either with the prudent man rule or with whatever custom it had established, for then only would the Nixon Case apply. Since it did owe the deceased the duty to warn him in accordance with this custom at the time he was killed, the negligent failure of the defendant to do so, was, or may well have been found by the jury to have been, the proximate cause of his death. The risk of death attributable wholly to the defendant's negligence, of which the plaintiff's intestate neither was, or should have been, aware, is the risk which, under the majority opinion, he has been held to have assumed.

I would reverse and remand for a new trial.