## SOUTHERN RY. CO. v. VERELLE.
### No. 3254.

Circuit Court of Appeals, Fourth Circuit.
April 12, 1932.

Verelle, a railroad employee, was killed shortly before 8 a. m. on November 22, 1930, in the freight yard of the railway company, at Durham, N. C., when he walked upon a railroad track immediately in front of an approaching engine. The plaintiff claims that the evidence shows that Verelle did not see the approaching train, but that the fireman on the engine saw him in time to sound a warning and negligently failed to do so, and that by reason of this negligence, Verelle was struck by the engine and killed.

The theory of the defendant, on the other hand, is that Verelle's unfortunate death was due solely to his own negligence in walking in front of the train, and that there is no room for the application of the doctrine of the last clear chance because there was no opportunity to warn the deceased, or to prevent the accident after he was seen to be in a position of danger. Accordingly, the defendant moved the court to direct a verdict in its behalf; but the court, being of the opinion that the evidence was conflicting on the question raised, overruled the motion and submitted to the jury the following issues: (1) The negligence of the defendant; (2) the assumption of the risk by the deceased; and (3) the contributory negligence of the deceased. The jury found negligence on the part of the defendant, contributory negligence on the part of the deceased, but no assumption of risk on his part, and therefore found a verdict for the plaintiff in a substantial sum. The sole question for decision is whether the District Judge should have directed a verdict for the defendant.

Verelle was an experienced railroad man. He had worked for the railway company for twenty years prior to his death, and was then employed as flagman of a freight train running between Keysville, Va., and Durham, N. C. He had been on this run for almost two years, and was thoroughly familiar with the conditions at the railroad yard where he met his death. This place was a general classification yard, where trains were broken up and reassembled. There were four tracks used for this purpose, in addition to the regular track for through trains. The freight train, upon which the deceased was employed, had come down from Virginia the day before, and Verelle and others had slept in the caboose attached to the rear of the train in the yard during the night. He and his fellow workmen had taken breakfast, and the time was approaching when the train was to leave

Richard C. Kelly, of Greensboro, N. C., for appellant.

H. Woodward Winburn, of Greensboro, N. C., and Robert H. McNeill, of Washington, D. C. (Norma Janet Winburn, of Greensboro, N. C., and Thomas Clifford Carter, of Burlington, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

This action was instituted by Alma Webb Verelle, administratrix of the estate of Charmlin Jones Verelle, and guardian of his minor children, against the Southern Railway Company, under the provisions of the Federal Employers' Liability Act, 45 U. S. C. §§ 51 to 59 (45 USCA §§ 51-59).

for Keysville. One of his duties as flagman was to record the numbers of the cars in the train in a book furnished for the purpose, and in order to do this work, it was necessary to walk along side of the train. Remarking that it was getting late and time to take the numbers, Verelle took up the book and left the caboose through the rear door. Within a few seconds after he had left the car, he was struck and killed by an engine approaching from the rear on a track adjoining that on which his train was standing.

There was only one eyewitness to the accident, namely, the fireman who sat in the cab of the engine on the side next to the caboose; and it is the testimony of this man, offered by the plaintiff, which furnishes the only open question in this case. He testified that, as Verelle came out of the door of the caboose, he was facing the approaching engine in which the fireman sat, and that the engine was then only about ninety feet away. The engine was pulling a train of fifteen freight cars, at a speed of about fifteen miles an hour. Some noise must have been made by the approaching train, but the steam was not making much noise as the throttle was only slightly open. However, there was nothing to prevent Verelle, as he came out of the caboose, from seeing the engine on the track as it grew near. From the event, it seems certain that he did not see the train, but at the moment there was nothing in his actions to indicate this oversight. He walked down the steps of the caboose, face foremost, seemingly bent upon the business which he had to perform, and immediately walked in front of the moving engine. The space between the ends of the cross-ties of the adjoining track was about thirty-one inches, and this was the only distance he had to traverse before he was in danger, because the wall of the caboose on one side and the pilot beam of the engine on the other extended to the end of the cross-ties of their respective tracks or a little beyond. There is nothing in the evidence to show that the fireman had any reason to think that the deceased intended to step in front of the train. He testified on direct examination that as soon as Verelle stepped upon the track, he rang the bell, and on cross-examination, that the bell was rung the instant that he saw that Verelle was going in front of the engine; but it was too late and the man was caught before he could escape.

So far as this recital of the evidence has gone, it is clear that the deceased was solely responsible for his death. He was thoroughly familiar with his duties, and of the place where they were to be performed. The train was in full view, and he could have stayed in a place of safety on the caboose, or even in the small space between the tracks until the train had passed. The plaintiff, however, points out other parts of the fireman's testimony, and contends that these show that neglect on his part at least contributed to the accident. He testified that the engine was only thirty-five to forty feet away when Verelle stepped upon the track; that when Verelle reached the middle of the track, he turned to the left, and holding up the book before him, proceeded up the track with his back to the engine; that when he reached the point midway between the rails, he was only five or ten feet from the engine, and that then the bell was rung. The contention, based on this testimony, is that if the bell had been rung earlier, Verelle might have saved himself from injury. But if the testimony is read as a whole, it shows that the bell was rung the instant the danger became apparent. The distance of the moving person from the moving train at various points of time within the very few seconds that elapsed between his emergence from the car and the fatal accident, in the nature of things, could only be roughly approximated; and they should not be accepted as substantial proof that the fireman was not speaking truthfully when he said that he rang the bell as soon as he saw the peril of his fellow worker, an action which any man in his position would have taken promptly and instinctively. It is certain that the deceased walked into the path of the moving train, when there was no reason to expect him to do so; and there is no evidence from which we may infer that it was then possible to stop the train in time to save him. Such testimony as was given on this point was to the contrary. It was said that such a train, moving fifteen miles an hour, could not be stopped in less than ninety feet, but the deceased was only thirty-five or forty feet away.

The District Judge, being of the opinion that the various statements of the fireman constituted contradictory accounts of the accident, concluded that an issue had been made which should be decided by the jury, and gave instructions which fully and fairly submitted the question. We think, however, after a careful examination of the record, that the evidence of neglect was too slight to warrant this action, and that a verdict for the defendant should have been di-

rected. While it cannot be said that there was absolutely no evidence of neglect on the fireman's part, it seems to us quite insufficient to support the verdict. It was said by the Supreme Court in Small Co. v. Lamborn & Co., 267 U. S. 248, 254, 45 S. Ct. 300, 303, 69 L. Ed. 597: "The rule for testing the direction of a verdict, as often has been held, is that where the evidence is undisputed, or of such conclusive character that if a verdict were returned for one party, whether plaintiff or defendant, it would have to be set aside in the exercise of a sound judicial discretion, a verdict may and should be directed for the other party. The view that a scintilla or modicum of conflicting evidence, irrespective of the character and measure of that to which it is opposed, necessarily requires a submission to the jury has met with express disapproval in this jurisdiction, as in many others."

■■ It should be borne in mind, in determining the rights and liabilities of the parties in this case, that we are not dealing with the case of a passenger or of a stranger having a right to cross the railroad track at the point in question, but with an experienced employee engaged at his regular occupation in a railroad yard where the necessities of the business require a constant movement of cars and engines back and forth. Under such circumstances, it is not the duty of the railroad to keep a lookout for men at work in the yard, but they are expected to look out for their own safety. As the yardmaster, one of the plaintiff's witnesses, said: "Flagmen and switchmen are required to look out for themselves; that is the beginning of what a flagman and switchman learns, self protection." In cases to which the Federal Employers' Liability Act (45 USCA §§ 51-59) applies, Congress has abolished the fellow-servant doctrine, and modified the defense of contributory negligence; but it has retained the defense of the assumption of the risk except in cases in which the carrier has violated some statute enacted for the safety of its employees. Seaboard Air Line v. Horton, 233 U. S. 492, 503, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475: Toledo, St. Louis & Western R. Co. v. Allen, 276 U. S. 165, 171, 48 S. Ct. 215, 72 L. Ed. 513; Delaware, L. & W. R. Co. v. Koske, 279 U. S. 7, 10, 11, 49 S. Ct. 202, 73 L. Ed. 578; Chesapeake & O. R. Co. v. Kuhn, 284 U. S. 44, 52 S. Ct. 45, 76 L. Ed. ——.

■ It has long been established that railroad employees assume all the ordinary risks of their dangerous occupation. In Aerkfetz v. Humphreys, 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758, decided before the statute was passed, a repairer of tracks in a railroad yard was struck in the back and run over by a switch engine pushing two cars along the track upon which he was at work. The court said (page 420 of 145 U. S., 12 S. Ct. 835, 836): "He knew that the switch engine was busy moving cars and making up trains, and that at any minute cars were likely to be moved along the track upon which he was working. With that knowledge he places himself with his face away from the direction from which cars were to be expected, and continues his work without ever turning to look. Abundance of time elapsed between the moment the cars entered upon the track upon which he was working and the moment they struck him. There could have been no thought or expectation on the part of the engineer, or of any other employee, that he, thus at work in a place of danger, would pay no attention to his own safety. Under such circumstances, what negligence can be attributed to the parties in control of the train or the management of the yard? They could not have moved the cars at any slower rate of speed. They were not bound to assume that any employee, familiar with the manner of doing business, would be wholly indifferent to the going and coming of the cars. There were no strangers whose presence was to be guarded against. The ringing of bells and the sounding of whistles on trains going and coming, and switch engines moving forward and backward, would have simply tended to confusion. The person in direct charge had a right to act on the belief that the various employees in the yard, familiar with the continuously recurring movement of the cars, would take reasonable precaution against their approach."

In Chesapeake & O. v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914, an experienced section foreman on a railroad, one of whose duties was to examine and repair the track, was overtaken by a train while riding from his home to his work on a three-wheeled velocipede and killed. The engineer and fireman of the engine were not on the lookout. The foreman used the velocipede customarily while inspecting the track and had been given permission to use it also in going from his house to his work. The court held that the railroad company was not liable for the accident, because he assumed the risk of his employment. Mr.

1012

Justice Holmes said (page 219 of 271 U. S., 46 S. Ct. 495):

"For reasons that the jury found insufficient to excuse the omission, the engineer and fireman of the train were not on the lookout, and the question raised is whether as toward the deceased the defendant owed a duty to keep a lookout, or whether on the other hand the deceased took the risk.

"If the accident had happened an hour later when the deceased was inspecting the track, we think that there is no doubt that he would be held to have assumed the risk, and to have understood, as he instructed his men, that he must rely upon his own watchfulness and keep out of the way. The Railroad Company was entitled to expect that self-protection from its employees."

See, also, Toledo, St. Louis & Western R. Co. v. Allen, 276 U. S. 165, 171, 48 S. Ct. 215, 72 L. Ed. 513; Atchison, T. & S. F. Ry. Co. v. Toops, 281 U. S. 351, 355, 50 S. Ct. 281, 74 L. Ed. 896; Biernacki v. Pa. R. R. Co. (C. C. A.) 45 F.(2d) 677.

We do not mean to decide that there can be no recovery for injuries inflicted upon a railroad employee by a moving train, if they might have been prevented by timely action on the part of those in charge of the train after they had knowledge that that employee was in danger; that situation, as we have seen, was not involved in the pending case.

The judgment of the District Court must be reversed.