## McCLELLAN v. PENNSYLVANIA R. CO.
### No. 7.

Circuit Court of Appeals, Second Circuit.
Dec. 12, 1932.

John C. Robinson, of New York City (Morris A. Waigner, of New York City, of counsel), for plaintiff-appellant.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (M. L. Fearey, G. H. Merritt, and G. F. Tinker, all of New York City, of counsel), for defendant-appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

That failure to comply with an established custom to warn employees is actionable negligence when such failure is the proximate cause of injury to one whom the custom was created to protect is well settled. St. Louis & S. F. Ry. Co. v. Jeffries (C. C. A.) 276 F. 73, 75; Lehigh Valley R. R. Co. v. Doktor (C. C. A.) 290 F. 760, 763; Baltimore & Ohio R. R. Co. v. Robertson (C. C. A.) 300 F. 314; Norfolk & W. Ry. Co. v. Collingsworth (C. C. A.) 52 F.(2d) 827. Whenever there is substantial evidence of the existence of such a custom, the question of fact is for the jury and this applies to a railroad yard. Director General of Railroads v. Templin (C. C. A.) 268 F. 483; Lehigh Valley R. R. Co. v. Doktor, supra.

Like all other questions of fact, a custom must be proved by evidence which if believed is enough to put it beyond mere conjecture and into the realm of reality. As has often been said, a scintilla is not enough to take an issue of fact to the jury. A. B. Small Co. v. Lamborn & Co., 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597. It is familiar law that where impartial and reasonable men would reach but one conclusion on the evidence as to a claimed fact, it is the duty of the court to decide; and when its decision determines the rights of the parties, a verdict should be directed. Southern Pacific Co. v. Seley, 152 U. S. 145, 14 S. Ct. 530, 38 L. Ed. 391. Proof of a custom cannot be said to be enough to submit that issue to the jury unless there is substantial evidence to show that what is called custom amounts to a definite, uniform, and known practice under certain, definite, and uniform circumstances. Chicago, M. & St. P. Ry. Co. v. Lindeman (C. C. A.) 143 F. 946; Wabash R. R. Co. v. Kithcart (C. C. A.) 149 F. 108, 9 Ann. Cas. 497. Though it was for the jury alone to decide the fact as to the existence of a custom as one of the things to be considered in deciding whether or not the defendant was negligent, nevertheless as a special rule of conduct by which the defendant was to be judged it had to be proved as a definite, uniform practice before it could be accepted to alter the standard of care the law would otherwise fix. The usual prudent man rule which the law without proof sets up as the common standard would not suffice for the plaintiff in this case, for the employees of the defendant making the coupling did not know the plaintiff was in danger. Nor were they bound to know it. Aerkfetz v. Humphreys et al., 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758; Chesapeake & Ohio Ry. Co. v. Mihas, 280 U. S. 102, 50 S. Ct. 42, 74 L. Ed. 207; Michigan Cent. R. Co. v. Zimmerman (C. C. A.) 24 F.(2d) 23. Consequently, he had of necessity to prove a custom which would take him out of the general rule of law by the same measure of proof and under the same burden which rested on him to prove the defendant negligent for it was an essential part of that proof.

Some testimony introduced by the plaintiff to show the custom claimed was later stricken out, but what it was appears of record, and we shall treat it as being in the case for the purpose of testing the direction of the defendant's verdict, since the ground on which it was ruled out was that it had no tendency to show a custom.

The plaintiff testified that he had worked in the yard about one year and had worked in

other yards of the defendant in all about fifteen years. He was asked if there was a usage in the Tyrone yard as to "giving signals of any kind before an engine was backed into a standing string of cars to which it was to couple." Upon replying in the affirmative, he was asked, "What was the custom?" And replied: "Why, ringing the bell. They would start to ring the bell two or three car lengths before they would make the coupling. That is to give the men a warning." And he testified that the same custom prevailed in the other yards of the defendant in which he had worked.

A witness named Waite testified that he had worked in the Tyrone yard as an extra block operator for about a year up to October 24, 1930, from one day to a week at a time, and had worked in other yards of the defendant, but not continuously, for some twelve or thirteen years. When asked, "Now, will you state what the custom was, what was done when engines were backed into and connected with standing cars or standing trains?" he answered, "Yes, sir I always noticed that they rang the bell." He further testified that when the engine was from fifty to seventy-five feet from the standing train the bell would begin to ring and be kept ringing until just before the coupling was made or until it had been made. And he testified that this practice had been followed in the other yards of the defendant where he had worked. On cross-examination, he testified that no rule of the defendant provided for the practice he said he had observed; also, that there was a rule against sounding unnecessary signals as they made for confusion in a yard and that there was a penalty for the violation of it.

Another block operator named Williams, who had worked for the defendant twenty-four years and in the Tyrone yard about one year before the plaintiff was hurt, testified that during that year there was in effect a general custom or usage in regard to the manner in which engines were attached to standing cars, and when asked what it was, said: "The practice has been when making coupling from one or two, maybe three, car lengths away from the train the engine would sound a bell in warning, and keep on sounding it until actual contact was made." On cross-examination the following occurred:

"Q. And you have heard a bell rung? A. I heard the bell ringing before making the coupling.

"Q. Did you always hear a bell ringing? A. Well I cannot say as to every time.

"Q. No, of course. In fact, you weren't paying attention, were you? A. Yes.

"Q. Particularly to that work? A. Yes. I had watched them; deliberately watched them.

"Q. You have watched them? A. Yes.

"Q. And sometimes heard them ring a bell and sometimes they didn't, isn't that right? A. I wouldn't say specifically that is true. I am just taking it as a general rule. As a general rule they do it."

"Q. But you have seen them when they didn't do it? A. I cannot recall when I have not."

The defendant introduced in evidence its rules relating to the ringing of the engine bell.

They are:

"30. The engine bell must be rung when an engine is about to move, when running through tunnels, while approaching and passing public crossings at grade, and when passing a train standing on adjacent track."

"32. The unnecessary use of either the whistle or the bell is prohibited."

It called a yardmaster, two assistant yardmasters, the plaintiff's foreman, one of his fellow workmen, a conductor, a brakeman, a fireman, and a locomotive engineer, who all testified that there was no such custom to ring the bell as the plaintiff's evidence tended to show. These men were all in a position to know whether such a custom in fact existed and some of them were shown to have had many more years of experience than had the plaintiff's witnesses on this subject, but we do not put our decision that this was not a jury question on the conflict in the oral testimony alone. Compare, Chamberlain v. Penn. R. R. Co. (C. C. A.) 59 F.(2d) 986.

This claimed custom required the bell to be rung every time a coupling was made to standing cars. Such a practice was not provided for by rule 30 and if unnecessary was forbidden by rule 32. It would apply in instances where it was known that no one was on or about the standing cars; would apply where a coupling was made at the end of a long string of cars to which the engine was attached whether the bell could be heard at the point of coupling or not; and, in short, would apply always regardless of any reason for ringing the bell other than that a coupling was to be made to cars at rest. The inherent improbability that such a custom could have grown up either outside the rules or in conflict with them makes the solution of this question of custom not alone the determina-

tion of the credibility of one set of witnesses in respect to that of another giving conflicting testimony. It makes the evidence on this issue so overwhelming in favor of the defendant that the trial court was justified in directing the verdict. No jury could have reached any other conclusion upon a reasonable and impartial analysis of the evidence. Small Co. v. Lamborn & Co., supra; Southern Pacific Co. v. Seley, supra; Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720; Southern Ry. Co. v. Walters, 284 U. S. 190, 52 S. Ct. 58, 76 L. Ed. 239; Baltimore & Ohio R. R. Co. v. Groeger, 266 U. S. 521, 45 S. Ct. 169, 69 L. Ed. 419; Biernacki v. Penn. R. R. Co. (C. C. A.) 45 F.(2d) 677.

■ It remains only to be determined whether what the foreman said about the engine being back in ten minutes imposed upon the defendant the duty to signal its return. There is less than enough to show that, had the plaintiff gone to his car and got on in the usual way, the coupling operation whenever it occurred would have injured him. It was about the usual coupling. Nor can it be convincingly argued that there were any obstructions on the car above the stirrup which required the plaintiff to go between the cars to get on so as to charge the defendant with notice that he would do so. When the foreman told him to make his ditcher fast for the trip to Tipton and said the engine would be back in ten minutes, the plaintiff knew what the engine was going to do and apparently knew about how long it would take to do it. At least, there is nothing to indicate that the foreman knew, or that the plaintiff thought the foreman knew, any more about that than the plaintiff, with his fifteen years of experience, did himself. The plain import of what was said was that the plaintiff should have his ditcher fastened ready for the train to start for Tipton in ten minutes. To stretch it to the point of meaning that he was assured that he could disregard his own safety in getting on the flat car in any way he pleased upon the assumption that at least ten minutes would expire before the engine would be back and couple on is preposterous.

As no actionable negligence on the part of the defendant was proved, the verdict was properly directed. Atlantic Coast Line R. Co. v. Temple, 285 U. S. 143, 52 S. Ct. 334, 76 L. Ed. 670; Atchison, Topeka & Santa Fe Ry. Co. v. Saxon, Adm'r, 284 U. S. 458, 52 S. Ct. 229, 76 L. Ed. 397.

Affirmed.