ALICE CYPHERS, ADMINISTRATRIX OF THE ESTATE OF CHARLES CYPHERS, DECEASED, RESPONDENT, v. ERIE RAILROAD COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT.

Argued February 16, 1933—Decided April 28, 1933.

For the appellant, *Ralph E. Cooper* (*George S. Hobart,* on the brief).

For the respondent, *John E. Selser.*

The opinion of the court was delivered by

PARKER, J. The plaintiff's intestate, a flagman in the employ of the defendant, met his death shortly before seven o'clock on Sunday, October 25th, 1931, while in the performance of his duties as flagman at the grade crossing of the street called Central avenue in East Rutherford, Bergen

county. The crossing had no gates, but seems to have been equipped with a flashlight to warn travelers on the highway, in addition to the deceased, with his flag during the day and lanterns after dark. The train that passed at the time of his death, and by which it is assumed that he was struck, was train 754, due at the crossing at six-forty-eight P. M., and a little late, but it could not have passed as late as seven o'clock because the deceased was to go off duty at that time. So far as the case shows, the deceased was on the lookout for the train and aware of its approach. He was provided with a small shanty of the usual type, and the flashlight which operated as a crossing warning was provided with an auxiliary white light which indicated to the flagman in his shanty that a train was coming. It is not suggested that the flashlight did not work or that the deceased was not informed thereby, or in some other way, of the approach of the train. The only reasonable inference from the very scanty evidence as to the manner of his death, is that he had gone on the crossing from the shanty with his two lanterns, red and white, to give warning to travelers on the highway, and was struck in some way by the train while in the performance of his duty. His body was found some ten or twelve feet from the westbound track and the two lanterns lay close by.

The railroad at this point was a double track, which in the railroad vernacular runs east and west; the westbound track being the "northerly" track and the eastbound track the "southerly." The precise relative location of the shanty does not appear, but seems immaterial. In the operation of the road, it was sometimes convenient for the operating department to cause eastbound trains to run over this section of road on the westbound track; and train 754 that night was so running. No witness saw the deceased struck by the train, and the circumstances of the accident must be left to such inference as is practicable from the testimony. Apart from some unusual condition of the train, such as a projecting object, of which there is no evidence whatever, the only possible inference to be drawn as to the manner of death is that when the train crossed the crossing the deceased was either on

the westbound track on which it was running, or so near it as to be struck by the overhang of some part of the train.

The trial judge refused a nonsuit and direction, and allowed the case to go to the jury on the theory that they might be able to work out some negligence on the part of the railroad company from the testimony. He charged, of course, the rule laid down by the federal statute with respect to contributory negligence not being a bar. If the workmen's compensation law of this state applied, the case would doubtless be one for an award of compensation. If the common law of master and servant applied, there would be no case for a jury. The question before us is whether there was a case for the jury under the federal statute. The charge of the trial court was rather indefinite on the matter of negligence, and we are unable to find that any theory of negligence was specifically laid before the jury with the single exception of running the train on an unusual track without notice to deceased. He said: "The plaintiff's claim is that the train went over on the other track and traveled on a track that was not the usual track to travel on. There is testimony in the case that instructions were given to the deceased that trains might come from any direction, so the defendant says that was not negligence. The defendant says that those instructions were disobeyed by this deceased, who had been there for a period of two years and more. You must determine these questions, and it is for you to say what the verdicts shall be in this case from the evidence as you have it."

The complaint charged a great many forms of alleged negligence, but as to most of them there is no evidence upon which to found them. The specific allegations are (1) the defendant operated the train without due care; (2) the defendant operated an eastbound train on the westbound track without advising plaintiff's intestate of any change in the running of the train; (3) the defendant failed to observe the standards, rules and regulations of the interstate commerce commission. Of this there is no evidence: (4) that the defendant failed to give the statutory signal required by our state. There was no evidence of the omission of this signal, and the judge ex-

pressly charged the jury not to consider that point; (5) the defendant did negligently, carelessly and unlawfully drive and propel the train against the plaintiff's intestate with great force and violence; (6) the defendant failed to have a sufficient crew to ascertain the presence of plaintiff's intestate on the track and to warn him of the intended movement of the train. There is no evidence of the failure to have a sufficient crew: (7) that the train was behind time. No negligence can be predicated, however, on that fact: (8) that the train was operated on the wrong track; (9) that it was operated at a great and excessive rate of speed and in a reckless and careless manner. Of this there is no evidence.

It will be seen, therefore, that the substantial charge of negligence is that the train was operated on the wrong track without any warning to the deceased; and, as has been said, this is what the judge suggested to the jury as a possible basis for a finding of negligence.

There is no evidence whatever of the existence of any custom to warn flagmen or other similar employes of the operation of a train on an unusual track, and we fail to see that any such duty would exist, in the absence of a custom which had become known to the parties concerned. As to the statutory signals, they are prescribed for the benefit of travelers on the highway; and the decisions seem to be to the effect that as a general rule the railroad company owes no duty to give warning of the approach of trains to a flagman whose business it is to know of their approach and to warn others of it. 48 *L. R. A.* (*N. S.*) 150, *note; Conniff* v. *Louisville, H. & St. Louis Railroad Co.,* 99 *S. W. Rep.* 1154; *Zulke* v. *Michigan C. R. Co.,* 110 *N. W. Rep.* 493.

Many of the cases recognize some duty under certain circumstances to track walkers and track repairers who by the very conditions of their employment are required to be on the track. A recent case on that point is *Rocco* v. *Lehigh Valley Railroad Co.,* 53 *Sup. Ct. Rep.* 343, reversing the Court of Appeals of New York. But even in that case it was expressly pointed out by the Supreme Court of the United States that the accident occurred on a very blind curve where

the deceased could not see the train and the motorman of the train could not see him; and the court in distinguishing certain other cases said that the rule of assumption of risk in those cases applied to accidents on a stretch of track where the workman's view was unobscured. There is nothing in the present case to show any obstruction of the view, and so the present case is not within the ruling of the Rocco case, and would seem to be within that of the cases distinguished therein. We are unable to agree that a railroad company in the operation of a double track road is to be charged with negligence to its employes whose business it is to watch for trains and give notice of their approach to the public, in failing to notify them in advance of the operation of a particular train on an unusual track. Any such rule would impose upon the railroad company a burden which in common reason should not be so imposed.

Moreover, there was nothing in the conditions that required the deceased to be upon any track at all. A railroad witness called by the plaintiff testified positively that the instructions to the deceased, who had been over two years in the service at that crossing, were to keep off of both tracks when signalling the approach of trains; and even if the credibility of such witness was for the jury, the fact remains that fundamental good sense and ordinary prudence forbid standing on a railroad track or so near it as to be struck.

The court charged the jury as requested in the language of Chief Justice Beasley in *Pennsylvania Railroad Co.* v. *Matthews*, 36 *N. J. L.* 531, that a railroad track is a place of danger, and any one who incautiously places himself upon it and sustains damage in consequence of such carelessness is remediless. That rule, enunciated in connection with the doctrine of contributory negligence, may well be applied to some cases of assumed risk, and we think that this was such a case. The assumption of risk is often an inevitable feature of the employment itself; but in the present case such assumption was not called for by the employment, was definitely forbidden by the instructions given to the deceased if the evidence of the witness above mentioned is to be believed, and

was altogether needless. Our conclusion, therefore, is that the jury were not entitled to find negligence on the part of the defendant in running the train on the opposite track without previous warning to the deceased; and we think also that deceased, by placing himself on the track, or so near it as to be struck by a passing train, needlessly assumed the risk of such an accident as befell him.

The refusal of the court to direct a verdict for the defendant was therefore error and for this the judgment must be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.