[Civ. No. 9722.   First Appellate District, Division Two.—November 12, 1936.]

FRANCES MacDONNELL, Administratrix, etc., Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

Arthur Bergin Dunne and Dunne & Dunne for Appellant.

M. Mitchell Bourquin and Clinton L. Markley for Respondent.

NOURSE, P. J.—Plaintiff had a verdict for $30,000 for damages for the death of her husband who was killed while employed as a member of a switching crew in the freight yard of the defendant company. The action was brought under the Federal Employers' Liability Act and charged negligence in the attempt to couple a group of standing freight cars. The defendant based its defense and rested its appeal on the main grounds that there is a failure of proof of negligence, and that the risk was assumed by the employee.

The facts are without material dispute. The only conflicts relied upon by the parties are more matters of interpretation and construction of the evidence than a conflict upon the facts. The deceased and another employee were walking to their work through the freight yard of the Southern Pacific Company, maintained at Bayshore just south of San Francisco, and attempted to cross a track upon which seven empty cars were standing. As they were in the middle of the track these cars were struck by a moving train of thirty-three cars for the purpose of making a coupling. The coupling failed, and the standing cars moved so suddenly that the deceased was unable to get clear of the track. His companion was struck by the edge of the first freight car but immediately got to his feet, climbed to the top of that car, and gave a signal to stop the train. The cars were practically at a stop when the signal was given, the movement from the point of contact with the deceased being variously estimated as between forty-eight and seventy-one feet. There is some dispute between the witnesses as to the speed of the cars at the time of the impact, as to the time when signals were given to

stop the main train, and as to the clearance which deceased and his companion gave in endeavoring to pass in front of the freight car, but these do not affect the issues involved. The material facts are that the defendant was engaged in a common and routine railroad operation which was well known to all its employees and the nature of which was in itself a warning of danger to them and of such a character that no other notice or warning could be required from the defendant. The defense of assumption of risk is based upon these facts and also on the rule of the company which specially required the employees to expect trains or cars to be moved at any time on any track, and the warning to such employees to take care to avoid injury to themselves or others which might arise from these conditions. The plaintiff's case rests upon the theory that the coupling was not made in accordance with the rules and customary practice upon which the deceased relied when crossing the track.

The case differs from the ordinary action of negligence, where the question of the sufficiency of the evidence in so frequently left to the responsibility of the jury, because the action is based on the Federal Employers' Liability Act, and the plaintiff must recover, if at all, under the terms of that act as interpreted by the federal cases. (*Toledo, St. Louis & W. R. R. Co.* v. *Allen*, 276 U. S. 165 [48 Sup. Ct. 215, 72 L. Ed. 513].) For this reason it is not sufficient for plaintiff to show that injury or death was incurred while the employee was engaged in the course of his employment. It is essential to show that the defendant was guilty of some breach of duty owed to the deceased in respect to the matter charged as negligence. (*Chesapeake & O. R. Co.* v. *Mihas*, 280 U. S. 102 [50 Sup. Ct. 42, 74 L. Ed. 207] ; *Baltimore & O. S. W. R. Co.* v. *Carroll*, 280 U. S. 491 [50 Sup. Ct. 182, 74 L. Ed. 566].) It was said in *Means* v. *Southern California Ry. Co.*, 144 Cal. 473, 478 [77 Pac. 1001, 1 Ann. Cas. 206], that in order to constitute actionable negligence it must appear that the injury complained of resulted from a failure on the part of the defendant to discharge a duty or obligation which the defendant was under to protect the plaintiff from injury. The leading case on this subject is the Mihas case, *supra*, where the facts are closely similar. Mihas was injured while crossing in front of standing cars which were suddenly struck in a switching

movement. As to this point the Supreme Court said: "If there was a violation of duty, therefore, on the part of the railway company, it was not of a duty owing to Mihas; and the rule is well established that it is not sufficient for a complainant to show that he has been injured by the failure of another to perform a duty or obligation unless that duty or obligation was one owing to the complainant." Here there is no evidence of any rule or custom to give warnings to men working around the yard when cars are being moved or couplings are being attempted. There is no evidence of a duty to set brakes on standing cars when couplings are being made, and no evidence of any duty on the part of the engineer to give warning by whistle or bell from the locomotive, and no evidence that any sign or notice should be attached to the standing cars before a coupling is attempted. To the contrary, the evidence is that when a coupling will not be attempted a warning that standing cars are not to be moved is given by placing a blue flag on the end of the car. There is no evidence of any duty to place a man at the end of the standing cars to give warning of the attempted coupling to employees or others. The only evidence of a duty in this respect related to the maintenance of a man at the point of attempted coupling, and whether this man was in position at the time or not is immaterial because he could not have been seen or heard by the deceased if any warning had been attempted.

Plaintiff must recover then, if at all, upon the single theory that the switching operation causing the injury was not in accord with common and routine practice, but in violation of the rule and customary practice upon which the deceased was entitled to rely. This theory rests in turn upon the relative principle that the employer's violation of a rule or fixed custom relieves the employee from the application of the assumption of risk doctrine. Though this theory has often been referred to as an exception to the doctrine of assumption of risk, it is in truth merely an expansion of that doctrine to make the "duty owing to the employee" referred to in the foregoing cases inure to an employee who has suffered injury through reliance upon a rule of conduct established by the employer.

■ Evidence supporting the theory is that, in harmony with the company rule that "switching must be carefully

done to avoid shocks from abrupt starting and stopping of cars or from impact in making couplings", it was the established custom and practice in the railroad yard to stop or cut off the motive power by timely signal before contact between the moving cars and the standing cars. Evidence was also given showing that when the couplings were made in accordance with this rule and practice the movement of the standing cars would not be more than a couple of feet under ordinary conditions. Testimony was given by those experienced in these coupling operations that, under the particular conditions existing at the time of the injury, and giving consideration to the slack in the seven standing cars, there should have been no appreciable movement of the seventh car (the one which struck deceased) if the coupling had been made in accordance with the rule and practice.

There can be no question that this record discloses evidence which, if believed, would justify the jury in finding the existence of the practice in making such couplings, the failure of the engine crew to observe that practice in this instance, and the reliance of the employees in the yard upon the observance of the practice as regulating their conduct in crossing the tracks. We must assume in support of the verdict that the jury found all these matters in favor of the plaintiff and thus created a case which comes within the exception to or modification of the rule of the Mihas and similar cases. Upon this theory the judgment finds support in *New York Central R. Co.* v. *Marcone,* 281 U. S. 345 [50 Sup. Ct. 294, 74 L. Ed. 892] , *Chesapeake & Ohio R. Co.* v. *Proffitt,* 241 U. S. 462 [36 Sup. Ct. 620, 60 L. Ed. 1102] , *Erie R. Co.* v. *Downs,* 250 Fed. 415, and *Chicago, B. & Q. R. Co.* v. *Kelley,* 74 Fed. (2d) 80.

Appellant complains that the damages allowed are excessive. The deceased left a widow and three minor children; he had steady employment at wages ranging from $175 to $200 a month; he had a life expectancy of 25.27 years; and his widow had an expectancy of 27.45 years. The jury's estimate of damage was not so high that prejudice or passion is suggested, and hence the verdict is not subject to attack upon this ground.

The appellant complains of a number of instructions given and of a number of proposed instructions refused, all

relating to the conduct of the deceased and to appellant's duty toward him as an employee. It is not claimed that these issues were not correctly covered by the instructions given; the complaint is that the instructions proposed by appellant and refused stated the issues more clearly and concretely than those which were given, and that the latter were in some instances vague and uncertain. We have examined these and are satisfied that the jury was fully and fairly instructed and that these particular issues were presented with a degree of certainty adequate for all purposes of the case.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 12, 1936, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 11, 1937.