### KURN et al. v. STANFIELD.
### No. 11615.

Circuit Court of Appeals, Eighth Circuit.
May 1, 1940.

Rehearing Denied May 24, 1940.

470

C. H. Skinker, Jr., of St. Louis, Mo. (A. P. Stewart and J. W. Jamison, both of St. Louis, Mo., on the brief), for appellants.

Roberts P. Elam, of St. Louis, Mo. (Mark D. Eagleton, of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

The trustees of the St. Louis-San Francisco Railway Company appeal from a judgment for personal injuries recovered by Marion F. Stanfield under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59. He was concededly injured while engaged in interstate commerce and the case is within federal jurisdiction. Terminal R. Association v. Kimbrel, 8 Cir., 105 F.2d 262.

Marion F. Stanfield was a brakeman, fifty-six years of age, having had twenty-five years experience with the railroad. He was injured at half past three o'clock in the morning of August 3, 1937, when a freight train which he was directing in switching movements backed up without having received a signal so to do. Stanfield did not see the cars coming toward him in time to get off the track and was run down; his right leg was crushed and mangled so that it had to be amputated about midway between the knee and ankle.

The accident occurred at Sikeston, Missouri, a small town in the southeastern part of the state on the railroad's line from

Chaffee, Missouri, to Memphis, Tennessee. Stanfield was working as a member of the crew of a freight train of forty-nine cars which came into Sikeston from the north; some of these cars were to be left in Sikeston, and a Rock Island box car was to be picked up from a siding there. After several switching operations had been accomplished the train had been cut to twelve cars, and these had been backed up the so-called house track siding where Stanfield coupled them to the Rock Island box car. Cheatham, the conductor of the train, at this point handed his orders to Stanfield and told Stanfield to take charge of further movements, the orders being to move the train back off the house track south onto the main line, to come back up the main line to a position north of the switch and there cut off the Rock Island box car, then to go back and re-enter the house track to leave ten of the remaining twelve cars there. The engine was on the south end of the twelve cars and faced south. When Stanfield signalled the engineer to pull south out of the house track the engineer did not stop on the main track, but went on beyond into a new passing track some 450 feet south of the house track switch. Stanfield then walked back north to reopen the switch to the house track and met Conductor Cheatham who had finished his local business and was walking south to attend to some matters on another track there. Cheatham asked if Stanfield was going to be able to get his cars set out in time within regulations, which meant by 3:47, the time the next through train coming on the main track was scheduled to leave the next town north. Stanfield said yes, estimating his time as more than adequate. He then continued on to the house track switch.

About 172 feet north of the house track from the switch there was a grade crossing with Ruth Avenue, in Sikeston. Conductor Cheatham had protected this crossing, in accordance with regulations, when the train pulled in to pick up the Rock Island box car, but now that Cheatham had gone about other business Stanfield undertook the duty of protecting the crossing and planned to also check clearance for the ten cars which were to be left on the house track. He had to cross the track to be seen for signals. But he had no more than thrown the switch and started up and across the track a few steps when he heard a "racket", and turning his head saw the lead car of the backing train within half a car length of him coming down the track. The switch stand was south of the point where the rails for the house track intersected with the main line track, so that as the house track switch was thrown he would be safe on the main line track about fourteen feet north of the switch. He was inside the east rail, about a foot from it, but was facing north and a little west. When he heard and saw the cars he tried to go ahead up the track and outrun them, but he had not taken more than two steps when he was hit and run over some eleven and a half or twelve feet from the switch stand. Some three or four cars ran over him before the train stopped. Conductor Cheatham was the first to reach him. Stanfield was taken to the hospital where his leg was amputated. He suffered great pain and up to the time of trial had not been able to get an artificial leg which could be fitted so as to meet complications and be worn comfortably. As often happens with such injuries, nerve lesions caused him to feel pain in parts of his foot which had been amputated. During the two years which elapsed between injury and trial he had only had employment as an election clerk during an election.

In his complaint, brought in the federal court under the Federal Employers' Liability Act, Stanfield alleged that while he was acting in the scope of his duties in interstate commerce he was negligently injured through the violation of the railroad's rules and customs, particularly in that the engineer started the train without a trainman on the front end of the leading car and without a light on this car, and without stopping the speed of the cars or slackening them, and so unnecessarily and negligently ran him down, when in the exercise of due care the employees operating the train would not and should not have done so. The trustees by their answer denied that the alleged custom existed or that there was necessity of having a trainman or light on the front end of the leading car during switching operations, but conceded that there were rules requiring them to give warning by engine bell when moving and to start only on signal and to protect crossings. They denied that Stanfield was injured through their negligence and further stated that he had assumed the risk of being hit while venturing upon the tracks during the course of switching operations.

The trustees introduced no evidence at the trial, and the case went to the jury on the pleadings and the testimony of the plaintiff and his doctor as the sole evidence. The trustees' answer had admitted that there was a rule and custom not to start trains except upon proper signal, and they introduced no evidence to contradict Stanfield's testimony that under the circumstances a signal from him was required and had not been given. Nor did they attempt to prove that he was not accurate in stating that the night was dark and a car could not be seen over twenty feet, or half a car length away, or that the engine bell of the type used on that "4000" engine could hardly be heard to the engine's rear, even in the cab, since the bell threw its sound forwards. The court overruled a motion of the trustees for a directed verdict and submitted the case to the jury upon the theory that the trustees could be found negligent in starting the train without proper signal if Stanfield had not assumed the risk. On the measure of damages the court charged: "Now if your verdict be for the plaintiff you should allow the plaintiff such damages as in your good judgment will compensate the plaintiff for the pain and suffering that has occurred, for any loss of earnings that has occurred or will occur in the future, and for any future pain and suffering which you conclude will result from his injury, not to exceed the amount indicated by Counsel as the amount sued for, sixty thousand dollars". There was no objection or exception to this quoted part of the charge. The jury returned a verdict for plaintiff in the amount of $30,000. The trustees filed a motion for judgment in accordance with their previous request, or, in the alternative, for a new trial. As ground for the motion they asserted, among other grounds, that the verdict was grossly excessive, and that the verdict showed by this excessiveness that it was the result of passion, bias and prejudice on the part of the jury. The court denied the motion and the trustees appeal.

They contend that the evidence shows that they were guilty of no actionable negligence, but that Stanfield's own negligence was the sole proximate cause of the accident, or that it resulted from the risk assumed by him. They contend further that the court's charge was erroneous in that it submitted the case on the sole defense of assumed risk as though the trustees had conceded that the rules had been negligently breached, though in fact they had made no such concession. Further, that the recovery was excessive under Missouri law and showed that the verdict was the result of passion and prejudice.

The trustees' objection to the court's charge may be briefly disposed of. The evidence showed that Stanfield was the one whose function it was to give the signal proper for starting the train and that he had not done so. The charge required the jury to find that Stanfield fully sustained the burden of proof imposed upon him before a verdict could be returned in his favor. The defense of assumption of risk was properly submitted. See Great Northern R. Co. v. Leonidas, 305 U.S. 1, 59 S.Ct. 51, 83 L.Ed. 3. The charge must be read as a whole, not by isolating certain segments, S. S. Kresge Co. v. McCallion, 8 Cir., 58 F.2d 931, 934, and when so considered we find no error in it.

In attacking the sufficiency of the case made out by Stanfield's testimony the trustees contend that he did not prove that its rule not to start an engine except on proper signal was violated. But the trustees had pleaded that there was a custom not to start except upon a proper signal, and they made no attempt to contradict or disprove Stanfield's statement that under the circumstances which he presented by his testimony a signal from him was required as the only proper signal contemplated by the rules. He had been delegated the supervisory duties of the train conductor by that official, and he was moreover the man on the scene at the switch where he would be the employee best qualified to observe when the train might be safely signalled to come on. His testimony was reasonable and uncontradicted and constituted sufficient proof that the train was moved in violation of the rules. St. Louis & San Francisco R. Co. v. Jeffries, 8 Cir., 276 F. 73; see Fernald v. Boston & M. Railroad, 2 Cir., 62 F.2d 782, loc. cit. 783, et seq. Cf. McClellan v. Penn. R. Co., 2 Cir., 62 F.2d 61.

The trustees also argue that Stanfield's own negligence was the sole cause of the accident, because he said that when he saw the train coming he tried to outrun the cars. And such a means for avoiding being struck by an oncoming train would, of course, under many circumstances be utterly foolhardy and would pre-

sent a sufficient proximate cause of injury to a pedestrian who would resort to it. But in Stanfield's situation this was not true. When he first saw the train it was nearly upon him; he had no time to turn and get over the rails and off the track to the side, and there was justification for his immediate reaction in the moment of peril that his best chance for safety lay in running ahead the few strides to where the train would be switched off from behind him. Having just thrown the switch he knew the train could not follow on the main track but would turn east away from him. He lost the race by some two strides, but his conduct did not constitute negligence as a matter of law as the proximate cause of the accident.

A railroad is of course not an insurer of the safety of its employees. Wheelock v. Freiwald, 8 Cir., 66 F.2d 694. But we do not regard the cases the appellants cite as being in point on the facts of the present case.[1] It is true that railroad employees, particularly those working in yards, must as a part of their duty exercise due care for their own safety.[2] But employees are entitled to rely upon rules and customs which determine the standards of what they must anticipate.[3] Stanfield had not given the necessary signal which was the condition precedent without which his train should not have proceeded and he was not as a matter of law bound to anticipate that it would come down upon him suddenly and without warning.

A case most closely approximating the present case on the facts is New York, O. & W. R. Co. v. Oles, 2 Cir., 296 F. 474, 475. There a switchman threw his switch and started to walk up the side of the track, coming within danger of the overhang of the cars when he moved in near the rails to avoid an obstruction which lay in his path. The evidence was in dispute as to whether he had signalled the engineer to come on before he started walking up the track, but the locomotive did back up the track and he was struck and injured. The Court of Appeals considered the case on appeal from a judgment for the switchman, and held that the trial court was in error in refusing an instruction for the railroad that if the switchman had signalled the train to come on, then there could be no recovery. "If the defendant in error gave the back-up signal, it is apparent that that act would preclude his recovery. It constituted a direction for the engineer to proceed. It would indicate that he had full knowledge of the movements of the locomotive, and, turning his back and walking, did not rely upon the locomotive remaining stationary." But the Court of Appeals did not question that the railroad would have been liable if the signal to come had not been given by the switchman. After the reversal the case was tried again and a subsequent judgment for the plaintiff was affirmed on appeal by that court per curiam and without opinion. New York, O. & W. R. Co. v. Oles, 2 Cir., 4 F.2d 1021.

---

[1] Baltimore & Ohio R. Co. v. Berry, 286 U.S. 272, 52 S.Ct. 510, 76 L.Ed. 1098; Atchison T. & S. F. Ry. Co. v. Toops, 281 U.S. 351, 50 S.Ct. 281, 74 L. Ed. 896; Great Northern Ry. Co. v. Wiles, 240 U.S. 444, 36 S.Ct. 406, 60 L. Ed. 732; Aerkfetz v. Humphreys, 145 U. S. 418, 12 S.Ct. 835, 36 L.Ed. 758; Bernola v. Penn. R. Co., 3 Cir., 68 F.2d 172; Wheelock v. Freiwald, 8 Cir., 66 F.2d 694; Jacobson v. Chicago, M. St. P. & P. R. Co., 8 Cir., 66 F.2d 688; McClellan v. Penn. R. Co., 2 Cir., 62 F.2d 61; Southern Ry. Co. v. Verelle, 4 Cir., 57 F.2d 1008; Norfolk & Western Ry. Co. v. Collingsworth, 6 Cir., 32 F.2d 561.

[2] Chesapeake & O. Ry. Co. v. Mihas, 280 U.S. 102, 50 S.Ct. 42, 74 L.Ed. 207; Penn. R. Co. v. Bourke, 6 Cir., 61 F.2d 719; Southern Ry. Co. v. Verelle, 4 Cir., 57 F.2d 1008; Carfelo v. Del. L., & W. R. Co., 2 Cir., 54 F.2d 475; Biernacki

v. Penn. R. Co., 2 Cir., 45 F.2d 677; Norfolk & W. R. Co. v. Kratzer, 6 Cir., 37 F.2d 522; Miller v. Canadian Northern R. Co., 8 Cir., 281 F. 664; Williamson v. So. R. Co., 183 S.C. 312, 191 S.E. 79; Cyphers v. Erie R. Co., 110 N.J.L. 405, 166 A. 342; Jones v. St. L.-S. F. R. Co., 325 Mo. 1153, 30 S.W.2d 481.

[3] St. Louis & San Francisco R. Co. v. Jeffries, 8 Cir., 276 F. 73; Gildner v. Baltimore & O. R. Co., 2 Cir., 90 F.2d 635; McClellan v. Penn. R. Co., 2 Cir., 62 F.2d 61, 63; Wyatt v. New York O. & W. R. Co., 2 Cir., 45 F.2d 705; Lehigh V. R. Co. v. Doktor, 3 Cir., 290 F. 760, 763; MacDonnell v. So. Pac. Co., 17 Cal.App.2d 432, 62 P.2d 201, 203, certiorari denied 301 U.S. 688, 57 S.Ct. 790, 81 L.Ed. 1345; O'Donnell v. B. & O. R. Co., 324 Mo. 1097, 26 S.W.2d 929; Grosvener v. New York Cent. R. Co., 343 Mo. 611, 123 S.W.2d 173.

In other cases courts have interpreted the applicable federal law so as to sustain liability in somewhat analogous situations. Gildner v. B. & O. Ry. Co., 2 Cir., 90 F. 2d 635; Line v. Erie R. Co., 6 Cir., 62 F. 2d 657; Halges v. Central R. of N. J., 2 Cir., 58 F.2d 169; Ill. Cent. R. Co. v. Norris, 7 Cir., 245 F. 926; Case v. St. L.-S. F. R. Co., Mo.Sup., 30 S.W.2d 1069, certiorari denied, 282 U.S. 893, 51 S.Ct. 107, 75 L.Ed. 787, Martin v. Wabash Ry. Co., 325 Mo. 1107, 30 S.W.2d 735; O'Donnell v. B. & O. Ry. Co., 324 Mo. 1097, 26 S.W. 2d 929, 933; Schiefelbein v. Chicago M., St. P. & P. R. Co., 221 Wis. 35, 265 N.W. 386, certiorari denied, 299 U.S. 558, 57 S. Ct. 20, 81 L.Ed. 63. We think the evidence here required the submission to the jury and a verdict in Stanfield's favor was fully justified.

 The trustees attack the amount of the verdict, claiming that it is so excessive as to indicate passion and prejudice. A verdict obtained by appeals to passion and prejudice cannot be allowed to stand. Minneapolis St. P. & S. S. M. R. Co. v. Moquin, 283 U.S. 520, 51 S.Ct. 501, 75 L. Ed. 1243; Jenkins v. Wabash Ry. Co., 232 Mo.App. 438, 107 S.W.2d 204, 218, certiorari denied 302 U.S. 737, 58 S.Ct. 139, 82 L.Ed. 570. But we find no evidence of such passion or prejudice in the present record, nor of any improper appeals addressed to the jury. Terminal R. Association v. Farris, 8 Cir., 69 F.2d 779, 785; see L. E. Whitham Const. Co. v. Remer, 10 Cir., 105 F.2d 371, 377; Greenwell v. Railroad Co., Mo.Sup., 224 S.W. 404; Kimberling v. Wabash Ry. Co., 337 Mo. 702, 85 S.W.2d 736, 743.

 This court has consistently held that the alleged excessiveness of a verdict can not be considered by this court. Missouri Pac. R. Co. v. Siratt, 8 Cir., 78 F.2d 253, 254; Kroger Grocery Co. v. Yount, 8 Cir., 66 F.2d 700, 92 A.L.R. 1166; Southern R. Co. v. Walters, 8 Cir., 47 F. 2d 3; Harris Trust & Savings Bank v. Earl, 8 Cir., 26 F.2d 617; Public Utilities Corp. v. McNaughton, 8 Cir., 39 F.2d 7; Sun Oil Co. v. Rhodes, 8 Cir., 15 F.2d 790; Interstate Stage Lines Co. v. Ayers, 8 Cir., 42 F.2d 611; Chicago, M. & St. P. R. Co. v. Heil, 8 Cir., 154 F. 626; Terminal R. Association v. Farris, 8 Cir., 69 F.2d 779, 785, 786; Mason City &c. v. Boynton, 8 Cir., 158 F. 599. See also Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L. Ed. 603, 95 A.L.R. 1150; Fairmount Glass Works v. Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439.

 The trustees also urge that the Supreme Court of Missouri has established in that state a rule of decision whereby recovery for types of injury, as for the loss of a leg shown in this case, must be restricted and kept within certain limits of uniformity. Kinney v. Metropolitan St. Ry. Co., 261 Mo. 97, 169 S.W. 23, 27; Lessenden v. Missouri Pacific Ry. Co., 238 Mo. 247, 142 S.W. 332; Pulliam v. Wheelock, 319 Mo. 139, 3 S.W.2d 374, 378; McNatt v. Wabash Ry. Co., 341 Mo. 516, 108 S.W.2d 33, 43; Cf. Woods v. St. Louis &c. Ry. Co., Mo.Sup., 8 S.W.2d 922; Kepner v. Railroad Co., 322 Mo. 299, 15 S.W. 2d 825, 65 A.L.R. 599. They contend that the federal courts are bound to apply such rule of decision since Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. But we are not required to consider the point here. The record shows that the court told the jury in the charge that the amount to be assessed as damages was limited by the amount prayed for in the petition, to-wit $60,000. The trustees were then given opportunity to object to the charge, but found no fault with this part of it. The declarations of the charge to which no objections were taken became the law of the case for purposes of an appeal. F. W. Woolworth Co. v. Carriker, 8 Cir., 107 F.2d 689, 692, and cases cited. See also Southern Fruit Distributors, Inc., v. Fulmer, 4 Cir., 107 F.2d 456, 459.

The judgment is affirmed.