## BERNOLA et al. v. PENNSYLVANIA R. CO.
## No. 5131.

Circuit Court of Appeals, Third Circuit.
Dec. 21, 1933.

E. C. Higbee, of Uniontown, Pa., and Fred J. Jordan and Murray J. Jordan, both of Pittsburgh, Pa. (John Duggan, of Pittsburgh, Pa., of counsel), for appellants.

Wm. B. McFall, Jr., and Dalzell, Dalzell, McFall & Pringle, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a judgment of the District Court for the Western District of Pennsylvania. The appellants, administrators of the estate of Giovanni Bernola, brought suit in trespass to recover from the Pennsylvania Railroad Company damages resulting from the appellee's alleged negligence in causing the death of their decedent. The suit is brought under the provisions of the Federal Employers' Liability Act § 1 (45 USCA § 51).

The testimony offered on behalf of the appellants is to the following effect: The decedent was employed as a member of a section gang of four men who were operating a mole upon its own temporary tracks. The mole was propelled by a gasoline engine, the exhaust of which caused considerable noise. Owing to an S curve in the tracks, trains were obstructed from view until within approximately 900 feet from the place where the decedent was working. The decedent was supplied with a whistle with which to warn his coemployees of the approach of a train. Although, for this reason, he had greater responsibility than the other laborers of his gang, he received the same rate of wages and had the same status. The appellee's supervisor, who was at the location where the section gang was working, instructed them to discontinue working for the day. Before quitting, it was necessary for the gang to remove the temporary tracks upon which the mole operated. The decedent, without taking any precautions for a lookout, stooped to remove one of the pins of the temporary tracks. While in that position, with his back turned, he was struck and killed by a train traveling at the rate of fifty miles an hour. The train was an extra and was unscheduled. No signals or warnings of its approach were given. The fireman was not at his seat in the cab. Apparently none of the train crew saw the decedent, since the train did not slacken its speed after the accident.

The trial court entered a nonsuit and later refused the motion for the removal of the nonsuit and for a new trial. Judgment was entered for the appellee.

The jury could have found from the evidence that the decedent was guilty of negligence because of his failure to comply with the appellee's safety rule, which required that: "Foremen, watchmen and others in charge of men engaged in work on or about the tracks must provide themselves with a whistle, which must always be used to warn men of approaching trains."

The Federal Employers' Liability Act (section 1) imposes liability upon the carrier for "injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 USCA § 51. Thus an affirmative finding that the decedent's infraction of the safety rule was a concurrent cause does not preclude a finding by the jury that his death was in part due to the negligence of the appellee's servant. Rocco v. Lehigh Valley Railroad, 288 U. S. 275, 53 S. Ct. 343, 77 L. Ed. 743.

However, the question here is whether or not the railroad company owed Bernola any duty to warn him of the approach of the train, and to keep a lookout for him; or whether or not the failure of Bernola, as foreman of his gang, to look out for the approach of trains in order to protect himself and warn his men was the primary cause of his death. If the railroad company did not owe any duty to him under the circumstances, it was free from negligence, and the failure of the engineer to give warning of the approach of the train was immaterial.

The appellant says that the case is controlled by the decision of the Supreme Court in Rocco v. Lehigh Valley Railroad Co., 288 U. S. 275, 53 S. Ct. 343, 77 L. Ed. 743, while the railroad company says that it is con-

trolled by those cases of which Connelley v. Pennsylvania R. Co. (C. C. A.) 228 F. 322, 323; Aerkfetz v. Humphreys, 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758; Chesapeake & Ohio Railway Company v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914, are typical. These cases hold that it is the duty of a person employed on the tracks of a railroad to exercise vigilance for his own safety, to keep out of the way of moving trains, at least on straight tracks, and that an employee working on a roadbed assumes the risk incident to such employment. In such cases the railroad does not owe the workman the duty of warning him of the approach of trains. In the case of Connelley v. Pennsylvania Railroad Company, supra, this court, speaking through Judge Buffington, said:

"It is an obvious fact that many occupations, as for example a powder mill operator, a structural iron worker, a diver, a blaster, a trackwalker, necessarily subject those who follow them to great dangers. When therefore a man contracts for such employment, he knows and takes on himself the risks and dangers incident to such dangerous work. His assumption of those obvious and unavoidable risks is in the very nature of things part of his employment. It follows therefore that the employer violates no legal duty to the employee in failing to protect him from dangers which cannot be escaped by any one doing such work. Narramore v. Cleveland, C., C. & St. L. Ry. Co., 96 F. 298, 37 C. C. A. 499, 48 L. R. A. 68.

"It is obvious that, even where a railroad operates its trains and moves its switch drafts in a proper and careful manner, trackwalkers and repairmen are necessarily subjected to great risks. Their very occupation is one of constant peril. Indeed, it follows from the nature of such employment that the duty of self-preservation has to rest on them, for no adequate protection, other than self-protection, can be afforded them. And such has been the reasonable holding of the law."

The Supreme Court in the Nixon Case, supra, cited with approval the Connelley Case and said that the railroad company, under the circumstances, was entitled to. expect self-protection from its employees, and that the duty of the railroad to this class of employees was not affected by that which it might owe to others.

But the Supreme Court in the Rocco Case, supra, held that this principle of law does not apply when an employee is working "on a blind curve, where he could not see the approaching train nor the motorman see him," "where the workman's view was obscured." This is a departure from the law which had theretofore prevailed, and, in order to determine exactly what the court meant by a "blind curve," we sent for a copy of the record and briefs used in that court and have carefully read them. The testimony shows that the circumstances surrounding this accident were unusual: The curve was blind at both ends, obscured by trees, shrubbery, a hedge, boathouses, and other buildings, so that a workman on the track, where the accident occurred, could not see around the curve farther than two to three hundred feet; a high west wind was blowing the water from Lake Cayuga over the tracks; many washouts had occurred; a rule which had been observed for many years required the train to give warning when it was approaching this curve; this was the last point of danger before the train reached Ithaca, and as the motorman had not met Rocco, who he knew would be on his inspection trip about this time, he might have expected to meet him on this curve.

Under these circumstances the Supreme Court said the issues of the negligence of the motorman and the contributory negligence of Rocco were questions of fact for the determination of the jury and not of law for the court.

But the court was careful to confine this rule of law to the particular facts in the case. It said:

"The questions presented are whether under the circumstances the respondent owed the decedent any duty to warn him of the approach of the train, or to keep a lookout for him; and whether Rocco's disobedience of the rule was in such sense the primary cause of his death as to render immaterial any neglect on the part of the motorman. * * *

"We think these facts required that the jury should determine whether the motorman exercised reasonable care to have his train under control, to sound a warning before entering the curve, and to be on the lookout for workmen whose presence might be expected on the day in question, when the waters of the lake were washing over the tracks at this point and inspection and repair might be required. Under the authorities cited, the decedent assumed the risks ordinarily incident to his employment as a track inspector, but in the circumstances shown we do not think they included a failure on the part of the motorman to keep a lookout and to give warning in places where the view of one who might be expected to be on the track or approaching in the opposite direction was shut off and the

probability of accident was therefore much greater than where the track is straight and the view unobstructed."

"These facts," "the circumstances" in this case, "required" the submission of the issues to the jury. That is as far as the court went, and we can go no further.

The question here is whether or not "the facts" in the case at bar are sufficiently similar to those in the Rocco Case as to require or permit the issue of negligence of the Pennsylvania Railroad Company to be submitted to the jury.

The testimony, as above stated, shows that Bernola was a foreman of a track section gang composed of himself and three men. They were using a machine called a mole which took up, cleaned, and redeposited ballast on the track. The rule of the railroad company required Bernola to carry a whistle with which to warn his men of approaching trains. He then had to keep on the lookout for trains.

The men were working on a curve. There were no unusual circumstances connected with it. The day was clear, and the track was not obscured by anything. An approaching train at the place of the accident could be seen for a distance of 900 feet. This cannot be said to be a "blind curve" obscured by trees, shrubbery, boathouses, and other buildings. At the time of the accident, Bernola was standing near the south rail of the west-bound track, not watching, but bent over with his head between his legs removing a pin from the mole track. In this position, he could not see the train, but one of his men saw it and warned him, when the train was four or five hundred feet away, but he did not raise up and get out of the way before he was struck. If he had been watching, as his duty required, for the safety of himself and his crew, the accident would not have occurred.

"The facts" and "circumstances" of this case are unlike those in the Rocco Case. We cannot, therefore, stretch the principle of law laid down for a "blind curve" where a person could see at most only three hundred feet and apply it to a long, open, unobscured curve on which a workman could see an approaching train nine hundred feet away. We must stop where the Supreme Court did. The facts of this case bring it within the rule laid down in the case of Chesapeake & Ohio Railway Co. v. Nixon, supra, and not within the rule of the Rocco Case.

Accordingly, the judgment of the District Court is affirmed.