## THOMSON v. DOWNEY. *
### No. 5386.

Circuit Court of Appeals, Seventh Circuit.
June 15, 1935.

K. L. Richmond, of Chicago, Ill., and Acton, Acton & Baldwin and Wm. M. Acton, all of Danville, Ill., for appellant.

Walter T. Gunn, Harold F. Lindley, Horace E. Gunn, and Leo W. Burk, all of Danville, Ill., for appellee.

*Writ of certiorari denied 56 S. Ct. 154, 80 L. Ed. —.

Before EVANS, SPARKS, and ALSCHULER, Circuit Judges.

SPARKS, Circuit Judge.

By this action appellee sought to recover damages in the sum of $10,000 from appellant for the death of her husband, Timothy C. Downey. Decedent was a section foreman and was struck by a train while he was operating a hand car on appellant's railroad track. A motion for a directed verdict was denied at the close of appellee's evidence in chief, and it was renewed and denied at the close of all the evidence. There was a verdict for $4,500. Motions for a new trial and in arrest of judgment were overruled and a judgment was entered on the verdict. From that judgment this appeal is prosecuted.

The railroad was engaged in interstate commerce, and liability was asserted under the Federal Employers' Liability Act (45 USCA §§ 51–59). The negligence charged was that appellant was operating the train at a high rate of speed of fifty miles an hour; that the train was two hours later than its regular schedule, and was being driven around a curve which tended to conceal the tracks ahead of the train from the vision of appellant's servants in charge of the train; that said servants knew, or had cause to know, that deceased was likely to be present and operating his hand car along the curve, and it was their duty to observe the track ahead and maintain such control of the train as to avoid colliding with the handcar, which they failed to do; that as a proximate result of such failure a collision occurred which caused decedent's death while he was in the exercise of all due care and caution for his safety.

Another count contained similar allegations and in addition thereto charged the existence of rule 1218 of the operating department of appellant, which made it the duty of the fireman to assist the engineer in keeping a look-out for signals and obstructions, and to call the engineer's attention thereto; that the fireman negligently failed to perform his duty in that respect, and as a proximate result thereof the collision occurred as hereinbefore set forth.

There was no witness to the occurrence and there was no dispute as to the material facts. Decedent had been a track foreman on the Chicago and Eastern Illinois Railway for more than twenty years immediately prior to his death on March 10, 1934. That railroad was a double track road and ran in a northerly direction from Evansville, Indiana, to Chicago. At Danville, Illinois, it ran almost due east for about two or three miles, then curved to the right, on a three degree curve, and ran almost south to Evansville. A three degree curve forms the arc of a circle whose radius is 1,910 feet. Decedent's employment required him to inspect that part of the track from Danville eastward around the curve to a point on the railroad where it again ran north and south, a distance of about three miles from Danville. About 1,000 feet north from the southern terminus of decedent's section the C & E I crossed the Chicago, Milwaukee & St. Paul Railroad which ran north and south. At that point the C & E I ran in a northwesterly and southeasterly direction, about 45° off due north. Adjacent to that intersection there was located an interlocking switch tower, or station, the Walz tower, north of the C & E I tracks and west of the Milwaukee tracks. At a point 400 feet northwest of the crossing the curve of the C & E I to the left, above referred to, began. It continued 2,109 feet to a point forty feet west of the west line of a cinder highway, which was the first north and south highway west of the Walz tower. From the west terminus of that curve the railroad ran almost directly west into Danville. The distance of the cinder road down the railroad track to the paved highway that runs east from the center of Danville, known as the Covington road, was 4,000 feet. From the tower northwestwardly for about 500 feet there was a cut in the right of way of from two and one-half to four feet. There was no timber on either side of the railroad tracks except two trees, ten and fourteen inches in diameter, standing on the inside of the curve a distance of 250 or 300 feet. Photographs submitted by both parties disclosed no foliage on the trees. There was a wire fence on the south and west sides of the right of way, with posts one rod apart. There was also a line of telegraph poles 150 feet apart between the fence and the tracks. There were no other obstructions to the sight of either the colliding train or the vehicle upon which the deceased was riding, except that the engineer while going around the curve could not see more than 300 feet of the track ahead of him, due to the fact that he was riding over the outside of the curve. The collision occurred about 200 feet south and east of the cinder highway. At that point one could have

seen an approaching train on the C & E I track at any point north of the Covington road, a trackage distance of approximately 4,000 feet, although he could not have seen the track for that distance on account of the curve.

On the day of the accident decedent was seen by the operator at the tower about 2 o'clock p. m. passing the tower to the southern terminus of his section. He wore an overcoat and a cap with ear flaps. He was riding on a railroad velocipede having metal wheels at a speed of about four miles an hour. The sun was shining and the temperature was about 25° above zero. He set the velocipede off the track at the end of his section. The next time he was seen he was going around the curve northwardly toward Danville, against a strong northwest wind, on the right-hand track about eight or nine hundred feet above the tower. At 2:18 p. m. the colliding northbound train passed the tower and it was more than three hours behind its regular schedule. It was a fast train and had eight coaches and was traveling at about forty miles an hour. A southbound train was due at the tower at 2:34 p. m. and it arrived on time on the west track about fifteen minutes after the accident. No one saw the accident. The engineer and fireman knew nothing of it until they saw and heard the débris passing the engine. That crew's trip terminated at the Oakland shops in Danville. Prior to the accident the last firing by the fireman was done between the Covington road and Walz. About seventy-five percent of his time when on duty was occupied in firing the engine. He did not know just what he was doing at the time of the accident, but he was preparing himself to get off the engine at his destination which was not more than a mile away. He said, however, that he was neither shoveling coal, nor changing his clothes, as he had to fire again before getting off at the Oakland shops. If he had been sitting in the fireman's seat and had been looking in that direction he could have observed decedent on the track.

After passing the Covington road the engineer whistled for the crossing at Walz. He then answered the clear signal with two short blasts. After passing the crossing at Walz he began whistling for the crossing at the cinder highway, and was still whistling at the time of the collision. During this time the bell was ringing. There was an automatic bell at the cinder highway crossing. It was tested on the day before the accident and again two days following it and was found to be in working order. It was operated by an electric current and if a train were traveling north on the northbound track the bell would begin to ring when the train passed the whistling post, 1,400 feet before the train reached the crossing. On other days prior to the accident, decedent had inquired at the tower with respect to the location of running trains, but he made no inquiry on the day of the accident. Before and at the time of the collision decedent had full knowledge of rule 7 of the company, which is as follows:

"Employe in charge of motor, hand, velocipede or push car, must, whenever possible, secure full information regarding location and movement of trains from operators at stations or from siding telephones before moving on main track from one point to another.

"Operators of cars must pay close attention to the position of automatic signals for indication of trains approaching from either direction.

"At curves where view is obstructed, a flagman must be sent ahead to avoid the possibility of a collision with either an approaching train or other car, except, light motor and velocipede cars will reduce speed to four (4) miles per hour (walking speed) when approaching and going around curve and must keep sharp lookout for trains and other cars approaching from either direction."

The principal question raised is whether there was any duty resting upon the engineer and fireman to be on the lookout for decedent. Appellant contends that it was the duty of decedent, being the section foreman, to look out for approaching trains, and that he assumed the risk appertaining thereto. The general rule, with respect to sectionmen and track inspectors, is that they assume all risks ordinarily incident to their employment. Chesapeake & Ohio Railway Co. v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914; Toledo, St. Louis & Western Railroad Co. v. Allen, 276 U. S. 165, 48 S. Ct. 215, 72 L. Ed. 513; Chesapeake & Ohio Railway Co. v. Mihas, 280 U. S. 102, 50 S. Ct. 42, 74 L. Ed. 207; Missouri Pacific Railroad Co. v. David, 284 U. S. 460, 52 S. Ct. 242, 76 L. Ed. 399; Bernola v. Pennsylvania Railroad Co. (C. C. A.) 68 F.(2d) 172; Kansas City Southern Railroad Co. v. Williford (C. C. A.)

65 F.(2d) 223; Sweeney v. Boston & Maine Railroad Co. (N. H.) 174 A. 676.

The Federal Employers' Liability Act, however, imposes liability on the carrier if the injury or death results "in whole or in part" from its negligence. Section 1 (45 USCA § 51). In Rocco v. Lehigh Valley Railroad Co., 288 U. S. 275, 53 S. Ct. 343, 344, 77 L. Ed. 743, the facts presented were in some respects similar to those here, and in other respects they were quite dissimilar. The court in that case held that the issues of negligence of the motorman and contributory negligence of the decedent were properly submitted to the jury. We understand the theory of that ruling to be that under the unusual circumstances of that case the risk involved could not be said to be one that was ordinarily incident to decedent's employment, hence if the motorman were guilty of negligence which proximately contributed to the death, the railroad company would be liable in proportion to that contribution.

The question before us, therefore, is whether the particular circumstances here presented were of such an unusual character as to warrant the conclusion that the risk involved could not be said to be ordinarily incident to decedent's employment.

In the Rocco case a high west wind had driven the waters of the lake over the track at various points and had been the cause of washouts and delays, and decedent's employment at that time required him to make morning and afternoon inspections at specified hours. In the afternoon of the day in question, while on his inspection, he was struck by a train on a blind curve where he could not see the approaching train nor could the motorman see him. The court in distinguishing Aerkfetz v. Humphreys, 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758, and Chesapeake & Ohio Railway Co. v. Nixon, supra, said:

" * * * Those cases applied the principle to accidents on a stretch of track where the workman's view was unobscured. Here, according to the proof, the curve on which the collision occurred, and obstructions at the side of the roadway, prevented any but a very short view of the track ahead. We think these facts required that

the jury should determine whether the motorman exercised reasonable care to have his train under control, to sound a warning before entering the curve, and to be on the lookout for workmen whose presence might be expected on the day in question, when the waters of the lake were washing over the tracks at this point and inspection and repair might be required. Under the authorities cited, the decedent assumed the risks ordinarily incident to his employment as a track inspector, but in the circumstances shown we do not think they included a failure on the part of the motorman to keep a lookout and to give warning in places where the view of one who might be expected to be on the track or approaching in the opposite direction was shut off and the probability of accident was therefore much greater than where the track is straight and the view unobstructed."

In the instant case all warning signals were given. There was no unusual or extraordinary condition present respecting the track, the curve or the weather. The record does not disclose that decedent had a scheduled time for inspecting the road nor that the train crew knew or had cause to know or expect that decedent would be on the curve. Instead of there being a blind curve, decedent, had he looked, could have seen the train on any part of that curve, and for a distance of 4,000 feet below the point where he was struck. Under the circumstances here presented we think the court could not say, and the jury should not have been permitted to say, that the risk involved was not one which was ordinarily incident to decedent's employment. There was no duty owing decedent by the engineer or fireman, on account of unusual circumstances, hence there was no liability on that ground. In the absence of proof that decedent was exposed to some unusual danger, it can not be held that the engineer and fireman were in duty bound to give him warning. They had a right to believe that he would keep out of the way of the train. Toledo, St. Louis & Western Railroad Co. v. Allen, supra.

Appellee contends, however, that under appellant's rule 1218 [1] it was the duty of the fireman to assist the engineer in

---

[1] Rule 1218

"The fireman reports to the road foreman of engines. He must obey the orders of the trainmaster in matters relating to the movement and protection of trains. When at the engine house, he is under the direction of the engine house foreman. When with the engine, the fireman must obey the orders of the engineman respecting the performance of his duties. He shall fire the engine properly with due regard to economy of fuel. The fireman

keeping a lookout for signals and obstructions. It is not sufficient for one to show that he has been injured by the failure of another to perform a duty or obligation unless that duty or obligation was one owing to him. Chesapeake & Ohio Railway Co. v. Mihas, supra; Chesapeake & Ohio Railway Co. v. Nixon, supra. In the Nixon Case a section foreman's employment obliged him to inspect the track. For that purpose he used a velocipede fitted to the rails. While performing that service he was overtaken by a train and killed. The negligence charged was that the engineer and fireman were not on the lookout, and proof was to that effect. It was held that that duty was one which the railroad company might owe to others but not to the class of employees to which the deceased belonged. We are convinced that rule 1218 was not promulgated for the safety or protection of decedent, and it should not have been admitted in evidence.

Under these circumstances we are of the opinion that the court erred in not instructing the jury to return its verdict in favor of appellant.

■ It is further contended by appellant that the court erred in not dismissing the declaration on the ground that a legal cause of action was not alleged in either count. It is therefore urged that this cause should be reversed without remanding. We quite agree that decedent assumed all risks ordinarily incident to his employment as a track inspector. However, each count of the declaration submitted to the jury alleged facts with respect to excessive speed, the condition of the curve, and the knowledge of appellant's servants with respect to decedent's presence, which might, if proven, render the risk one which was not ordinarily incident to his employment. While the proof did not sustain the allegations in the respects mentioned, yet we think the complaint was sufficient to withstand the motion to dismiss.

In Baltimore & Carolina Line v. Redman, 55 S. Ct. 890, 79 L. Ed. ——, decided by the Supreme Court on June 3, 1935, the Court held that, where the trial court had reserved its rulings until after the verdict on motions to dismiss for lack of evidence, and for peremptory instruction, and after the verdict had held the evidence sufficient and the motions ill-grounded, and accordingly entered a judgment for plaintiff on the verdict, then the Circuit Court of Appeals was warranted upon reversal of judgment for the plaintiff in directing the trial court to dismiss the declaration. In this case, however, the trial court did not reserve its rulings on motions to dismiss and for a directed verdict, but promptly overruled them before instructing the jury. The Redman Case, therefore, is not authority for us to direct a judgment of dismissal.

The judgment is reversed and the cause is remanded for a re-trial.

---

must report for duty at the appointed time; assist in shifting and making up the train when required; assist the engineman in keeping a lookout for signals and obstructions; call the indications of signals to the engineman; and assist in making repairs when required. He must not run an engine in the absence of the engineman, unless in such emergency he is directed to do so by the conductor or someone in authority. He must be familiar with the rules for the protection of trains and use of signals, which he must be prepared to use promptly. He must protect the front of the train when necessary and at all times when on duty he must be provided with current time table."