## CHICAGO, R. I. & G. RY. CO. et al. v. CUMMINGS.

### No. 1881.

Court of Civil Appeals of Texas. Waco.

May 6, 1937.

Rehearing Denied July 8, 1937.

Thompson & Barwise, of Fort Worth, and Geppert, Geppert & Victery, of Teague, for appellants.

B. Y. Cummings, of Fort Worth, and Geo. W. Barcus, of Waco, for appellee.

GALLAGHER, Chief Justice.

Mrs. Katherine Cummings, administratrix of the estate of B. F. Cummings, deceased, brought this suit against the Burlington-Rock Island Railroad Company and the Chicago, Rock Island & Gulf Railway Company and its trustees, Frank O. Lowden, James E. Gorman, and Joseph B. Fleming, for the benefit of herself as surviving widow and for the benefit of B. F. Cummings, Jr., and Mrs. Katherine White, son and daughter, respectively of B. F. Cummings, deceased, to recover damages for his death. The deceased was conductor of a switching crew operating in the yards, at Teague, and while in the discharge of his duties as such, was run over and killed by the engine operated by said crew. All the parties hereto agreed in open court that both said railroads were engaged, at the time of the death of said Cummings, in interstate commerce, and that his employment was in furtherance thereof, and that the cause of action asserted by appellee came within the provisions of the Federal Employers' Liability Act, U.S.C.A. title 45, chapter 2, §§ 51–59. Appellee, in her petition, charged that appellant owed various duties to said deceased employee; that it failed to discharge the same; that such failure was negligence; and that each act of negligence so charged was a proximate cause of his death. The court submitted the case on special issues and the jury found in response thereto, in substance: That appellee's deceased husband was injured and killed while in appellant's employment by its switch engine in its yards at Teague; that appellant's employees operating said engine did not keep a lookout; that their failure to do so was negligence and a proximate cause of the injury to and death of the deceased; that the employees engaged in operating said engine failed to give warning of its approach; that such failure was negligence and a proximate cause of the injury to and death of the deceased. The jury awarded appellee damages for her own benefit in the sum of $3,500, but failed to make any award in favor of either the son or the daughter of the deceased. The court rendered judgment in favor of appellee as administratrix against appellants for said sum of $3,500, with legal interest thereon, for her individual use and benefit, together with all costs incurred by her as such administratrix. The court, with the consent of

appellee, rendered judgment that she take nothing against the Burlington-Rock Island Railroad Company.

Prior to the submission of the case to the jury, appellants requested the court to instruct the jury peremptorily to return a verdict in their favor, which request was refused. After the return by the jury of its findings, appellants moved the court to render judgment in their favor non obstante veredicto, which motion the court denied.

### Opinion.

Appellants present assignments of error in which they assail the action of the court in refusing their request for an instructed verdict and in refusing to enter judgment in their favor notwithstanding the verdict of the jury. A general description of the switchyards will aid in understanding the issues involved. The main line of the railroad ran approximately north and south and said yards were located west of the same. The junction of the main switch track, which was designated as track No. 6, with the main line, was 100 yards or more south of the other switch tracks. From said main switch track two lead tracks extended in a northwesterly direction. The more westerly of the same was known as the blacksmith lead and connected at its farther end with the caboose track. The more easterly of the same was connected by switches with tracks known as Nos. 7, 8, 9, and 10. These latter tracks were about 20 feet apart. The crew operating the switch engine under the direction of the deceased Cummings were Lingo, engineer, Gale, fireman, Herring, head brakeman, and Gay, rear brakeman. The accident in which the deceased lost his life occurred about one o'clock in the morning. Train No. 98 had arrived from the south a short time before and was located on track No. 7. The deceased told Herring, the head brakeman, to take the caboose from said train and place it on the caboose track, and if the yard clerk had no orders for him, to get a car on track 10 and bring the same down and place it on track 6. In executing these orders Herring did not go with the engine but turned the same over to the rear brakeman, Gay. The crew detached the caboose fom the train, placed it on the caboose track, returned to the more easterly lead track, and backed up the same to track No. 10, where they got a car as directed and pulled the same down past

the junction with track 6. They then kicked the same onto track 6 and backed up and onto track 7. Just at that time the body of deceased was discovered lying between the rails of the lead track within a few feet of the front of the engine standing on track No. 7 as aforesaid. Surrounding circumstances not necessary to recite in detail indicated that he was struck by the front end of the switch engine returning down the lead from track 10 with the car attached in the rear, about 80 feet northwest of where his body was found. No one saw the accident. Herring testified that he remained behind to operate the switchstands. Deceased, after giving the orders above recited, went to the yard clerk and procured from him the switch list by which he was to be governed in directing further operations of the switch engine, and when last seen was reading the same near the junction of the lead track and track No. 8. This was only a short while before his body was discovered at the point aforesaid. He was alive and groaning at the time of such discovery, but died within ten or fifteen minutes thereafter. The question of whether an effective lookout was being kept at the time deceased was struck by the engine was, under the evidence adduced, a jury question, but there was no contention that any warning of its approach was given. It was not working steam at the time but was rolling on its own momentum.

■ Appellants' first contention under the assignments above recited is that no negligence causing the injury to and death of the deceased was shown by the evidence, and their second contention thereunder is that if there were such evidence, there was further evidence which showed as a matter of law that the deceased assumed the risk of being struck by appellants' engine and of being injured and killed thereby. These contentions must be considered and determined in accordance with the rules of law announced by our federal courts. The Federal Supreme Court has announced the rule, in substance, that in railroad yards, where engines and cars are constantly moving to and fro, there is ordinarily no duty on the railroad to keep a lookout nor to give warning or notice of their approach to men employed about and familiar with the operation of the yards; that it is primarily the duty of such employees to take precautions for their own safety in

passing over and along the tracks; and that when they fail to do so they assume the risk of injury. Aerkfetz v. Humphreys, 145 U.S. 418, 12 S.Ct. 835, par. 1, 36 L.Ed. 758; Chesapeake & O. Ry. Co. v. Nixon, 271 U.S. 218, 46 S.Ct. 495, 70 L.Ed. 914; Thomson v. Downey (C.C.A.) 78 F.(2d) 487, certiorari denied 296 U.S. 630, 56 S.Ct. 154, 80 L.Ed. 448; Southern Railway Co. v. Verelle (C.C.A.) 57 F.(2d) 1008; Pennsylvania R. Co. v. Lutton, (C.C.A.) 29 F.(2d) 689; Connelley v. Pennsylvania R. Co. (C.C.A.) 201 F. 54, 47 L.R.A.(N.S.) 867; Boldt v. Pennsylvania R. Co., 245 U.S. 441, 38 S.Ct. 139, 62 L.Ed. 385; Toledo, St. L. & W. R. Co. v. Allen, 276 U.S. 165, 48 S.Ct. 215, 72 L.Ed. 513; 39 C.J., p. 461, § 577. However, if there is a rule in force or a custom in vogue in a switchyard which requires those operating a moving engine to keep a lookout or give warning of its approach, failure to do so would constitute actionable negligence. St. Louis & S. F. Ry. Co. v. Jeffries (C.C.A.) 276 F. 73, 75, pars. 1 to 3, and authorities there cited; McClellan v. Pennsylvania R. Co. (C.C.A.) 62 F.(2d) 61, 63, pars. 1 and 2, and authorities there cited; Lehigh Valley R. Co. v. Doktor (C.C.A.) 290 F. 760; Director General of Railroads v. Templin (C.C.A.) 268 F. 483, certiorari denied 254 U.S. 656, 41 S.Ct. 218, 65 L.Ed. 460; 39 C.J., pp. 461, 462, § 577.

■ Since it was admitted that the crew operating the switch engine at the time were engaged in the furtherance of interstate commerce, under the authorities above cited, appellee failed to plead, prove, and secure a responsive finding of actionable negligence causing the injury to and death of the deceased, and the judgment of the trial court must therefore be reversed. Since the rules of law above recited are also applicable in part at least to the defense of assumed risk, no separate discussion of the same is deemed necessary.

■■ The rule in this state is too well established to require citation of authorities that when the judgment of the trial court is reversed and the cause is remanded for another trial, either party may amend his pleadings and introduce further evidence. This cause, as to the existence of rules, if any, prescribed, and of customs, if any, observed for the protection of members of switching crews engaged in the discharge of their duties in the yard at Teague, was not developed at the trial.

Appellee alleged various grounds of negligence which might have been reasonably based upon the existence of such rules or customs. Since the case was not fully developed, it is our duty to remand for another trial. Powell v. Parks, 126 Tex. 338, 86 S.W.(2d) 725, 726, par. 1; Saxon v. Atchison, T. & S. F. Ry. Co. (Tex. Com.App.) 50 S.W.(2d) 1095; Lusk v. Parmer (Tex.Civ.App.) 87 S.W.(2d) 790, 792, par. 4, and authorities there cited; Panhandle & S. F. Ry. Co. v. Friend (Tex. Civ.App.) 91 S.W.(2d) 922, 931, par. 12; Taylor v. Callahan (Tex.Civ.App.) 83 S. W.(2d) 1072, 1076, par. 11; Moore v. Blackwell (Tex.Civ.App.) 85 S.W.(2d) 980, 985, par. 10, and authorities there cited. See, also, in this connection, cases cited in 4 Texas Digest, title Appeal & Error, ▓▓▓▓ subdivisions (5) to (7), inclusive.

The judgment of the trial court is reversed, and the cause is remanded.